UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY JACKSON,

    Plaintiff,                              Hon. Janet T. Neff

v.                                          Case No. 1:19-cv-1039

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed.

**STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her

decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 53 years of age on her alleged disability onset date. (ECF No. 7-5, PageID.211). She successfully completed high school and worked previously as a mortgage loan processor, administrative assistant, warehouse receiving clerk, and ampoule examiner. (ECF No. 7-2, PageID.60, 69). Plaintiff applied for benefits on April 30, 2018, alleging that she had been disabled since February 18, 2017, due to

a right ankle injury, bilateral thumb injuries, difficulty performing tasks with her hands, unstable blood pressure, fatigue, anxiety, and depression. (ECF No. 7-5, 7-6, PageID.211-14, 237).

Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (ECF No. 7-3, 7-4, PageID.150-209) Following an administrative hearing, ALJ Colleen Mamelka, in an opinion dated July 11, 2019, determined that Plaintiff did not qualify for disability benefits. (ECF No. 7-2, PageID.52-91). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (*Id.*, PageID.26-31). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on September 30, 2018. (ECF No. 7-2, PageID.54). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also

provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate she is entitled to disability benefits and she satisfies her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff, through her date last insured, suffered from: osteoarthritis, bilateral basilar joint arthritis, and chronic pain syndrome, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (ECF No. 7-2, PageID.55-57).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform light work subject to the following limitations: (1) during an 8-hour workday, she can stand/walk for 4 hours; (2) she requires a sit/stand option at will provided she is not off-task more than 10 percent of the workday; (3) she can frequently finger and handle objects; (4) she can occasionally balance, kneel, crouch, crawl, operate foot controls, and climb ramps/stairs; (5) she cannot work around unprotected heights; (6) she cannot work on rough, uneven, or slippery terrain; and (7) she cannot climb ladders, ropes, or scaffolds. (*Id.*, PageID.57).

A vocational expert testified that Plaintiff, consistent with her RFC, could still perform her past relevant work as an administrative assistant and ampoule examiner. (*Id.*, PageID.87-88). The vocational expert further testified that there existed approximately 292,000 additional jobs in the national economy that an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (*Id.*, PageID.88-89). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I. Listing of Impairments

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff argues that the ALJ erred by finding that she did not satisfy the requirements of Section 1.02 of the Listings. Specifically, Plaintiff argues that her ankle and thumb impairments each separately satisfy Section 1.02.

An impairment satisfies a listing "only when it manifests the specific findings described in all of the medical criteria for that particular impairment." *Lambert v. Commissioner of Social Security*, 2013 WL 5375298 at *8 (W.D. Mich., Sept. 25, 2013) (citing 20 C.F.R. §§ 404.1525(d) and 416.925(d)). Plaintiff bears the burden to demonstrate that she satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). Plaintiff's burden, however, is not easily met. *See Peterson v. Commissioner of Social Security*, 552 Fed. Appx. 533, 539 (6th Cir., Jan. 21, 2014) ("the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation").

### A. Section 1.02

Section 1.02 of the Listing applies to:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity. . .and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable

> imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).   With:
>
> A.      Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> OR
>
> B.      Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R., Part 404, Subpart P, Appendix 1 § 1.02A.

Plaintiff argues that her ankle impairment satisfies Section 1.02(A) and that her thumb impairments satisfy Section 1.02(B).   These arguments are addressed separately below.

    B.      Section 1.02(A)

As noted above, this portion of the listing is satisfied by a showing that Plaintiff cannot ambulate effectively.   With respect to this matter, the regulations provide, in relevant part, as follows:

> (1) Definition.   Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.   (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.00(B)(2)(b).

The record does not support Plaintiff's argument that she lacked the ability to ambulate effectively prior to the expiration of her insured status. Treatment notes dated February 20, 2017, indicate that Plaintiff's gait and station were "normal" and that her joints, bones, and muscles were likewise "normal." (ECF No. 7-9, PageID.520). The results of a March 14, 2017, physical examination were unremarkable. (*Id.*, PageID.515-16). Treatment notes dated May 23, 2017, indicate that Plaintiff's range of motion, muscle strength, and muscle tone were all "normal." (*Id.*, PageID.505). Treatment notes dated June 26, 2018, reveal that Plaintiff can ambulate without the use of an assistive device. (ECF No. 7-10, PageID.624).

Treatment notes dated August 28, 2018, indicate that Plaintiff experienced decreased range of motion in her right ankle, but the results of an examination were otherwise unremarkable. (ECF No. 7-10, PageID.682). While treatment notes

-8-

dated February 6, 2019, indicate that Plaintiff was walking "with a limp," there was no suggestion that Plaintiff was unable to ambulate effectively. (*Id.*, PageID.634). Moreover, this evidence concerns Plaintiff's circumstance well after the expiration of her insured status.

In sum, the ALJ's conclusion that Plaintiff's impairments neither satisfied nor equaled in severity the requirements of Section 1.02(A) of the Listings is supported by substantial evidence. Accordingly, this argument is rejected.

C.     Section 1.02(B)

As noted above, this portion of the listing is satisfied by a showing that Plaintiff cannot perform fine *and* gross movements effectively due to impairments to a major peripheral joint in each upper extremity. With respect to this requirement, the regulations provide, in relevant part, as follows:

> Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.00(B)(2)(c).

The medical evidence does not support Plaintiff's argument that she satisfied this Listing prior to the expiration of her insured status. Treatment notes dated August 22, 2017, indicate that Plaintiff exhibited "normal" digits "without clubbing or cyanosis." (ECF No. 7-9, PageID.461). Plaintiff also exhibited "normal" strength and range of motion. (*Id.*). A June 26, 2018 examination revealed that Plaintiff exhibited 4+/5 grip strength and "full range of motion of both hands." (ECF No. 7-10, PageID.627). The doctor also reported that Plaintiff was able to "make a fist, dial a phone, dress and undress, tie shoes, button clothing, pick up a coin and pencil." (*Id.*).

X-rays of Plaintiff's wrists and thumbs, taken January 10, 2019, indicate "extensive degenerative changes" at the CMC joint. (ECF No. 7-10, PageID.630). Plaintiff was diagnosed with bilateral basilar joint arthritis. (*Id.*). This evidence, however, does not advance Plaintiff's position for two reasons. First, Plaintiff's doctor did not conclude or observe that Plaintiff's ability to perform fine and gross movements with her upper extremities was impaired. Second, this evidence is dated well after the expiration of Plaintiff's insured status.

In sum, the ALJ's conclusion that Plaintiff's impairments neither satisfied nor equaled in severity the requirements of Section 1.02(B) of the Listings is supported by substantial evidence. This argument is, therefore, rejected.

## II.     Residual Functional Capacity

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). Plaintiff argues that she is entitled to relief because the ALJ failed to properly assess her RFC. Specifically, Plaintiff argues that the ALJ failed to afford proper weight to her complaints of pain and medication side effects.

The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute her opinion for that of a medical professional, the ALJ is not required to tailor her RFC assessment to any particular opinion or item of evidence. *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004).

While the Court does not doubt that Plaintiff's impairments cause her to experience pain, the objective medical evidence, including that discussed above, does not support the argument that Plaintiff's pain limits her to a greater degree than the ALJ recognized. Likewise, the record belies the argument that Plaintiff experiences medication side effects that limit her more than the ALJ concluded. (ECF No. 7-9, PageID.473, 479, 484, 495, 502, 513). Plaintiff merely wants this Court to re-weigh the evidence and reach a different conclusion than the ALJ. This the Court cannot do. Accordingly, this argument is rejected.

## III. Obesity

Lastly, Plaintiff argues that the ALJ failed to properly consider her obesity when assessing her RFC. Plaintiff asserts that the ALJ failed to comply with Social Security Ruling 02-1p, Titles II and XVI: Evaluation of Obesity, 2000 WL 628049 (S.S.R., Sept. 12, 2002).[1] As the Sixth Circuit has held, Social Security Ruling 02-1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Commissioner of Social Security*, 359 Fed. Appx. 574, 577 (6th Cir., Dec. 22, 2009); *see also*, *Bledsoe v. Barnhart*, 165 Fed. Appx.

---

[1] This Social Security Ruling has since been replaced by Social Security Ruling 19-2p, Titles II and XVI: Evaluating Cases Involving Obesity, 2019 WL 2374244 (S.S.R., May 20, 2019). But, this Ruling applies only to applications filed on or after May 20, 2019. *See Ramirez v. Commissioner of Social Security*, 2019 WL 5802512 at *13 n.8 (N.D. Ohio, June 19, 2019). Thus, Plaintiff's argument is governed by SSR 02-1p.

408, 412 (6th Cir., Jan. 31, 2006) ("[i]t is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants").

While there is no indication that the ALJ considered Plaintiff's obesity, as Defendant notes this is because there is nothing in the record suggesting that Plaintiff was considered obese prior to the expiration of her insured status. On June 26, 2018, Plaintiff weighed 125 pounds. (ECF No. 7-10, PageID.624). Treatment notes dated September 10, 2018, indicate that Plaintiff weighed 140 pounds which correlated to a Body Mass Index (BMI) of 27. (*Id.*, PageID.669). According to the Centers for Disease Control and Prevention (CDC), a person is considered obese if her BMI equals or exceeds 30. *See* How is BMI Interpreted for Adults, available at

https://www.cdc.gov/healthyweight/assessing/bmi//adult_bmi/index.html

(last visited on Sept. 14, 2020). While Plaintiff's BMI was 31.37 on February 20, 2019, there is nothing in the record suggesting that Plaintiff's BMI was 30 or greater prior to the expiration of her insured status. Rather, at the June 2019 administrative hearing, Plaintiff testified that her weight gain had taken place "within the last couple months." (ECF No. 7-2, PageID.69).

In sum, the Court finds no error in the ALJ's failure to consider Plaintiff's alleged obesity when assessing her RFC. Moreover, even if the Court assumes that Plaintiff was obese prior to the expiration f her insured status, the record does not support the argument that such warranted a more restrictive RFC. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: September 14, 2020    /s/ Phillip J. Green
                            PHILLIP J. GREEN
                            United States Magistrate Judge